## COWHAM v. SHIPMAN.

ACCOUNTING—PARTNERSHIP.

> In a suit by the administrator of one deceased partner for an accounting against the other partner, who acted as attorney for certain Indians having claims against the United States, and who secured an appropriation by congress, after considerable litigation, by which the claims were paid,—under evidence showing that the Indians who shared in the fund appropriated were in part identical with those who engaged defendant as attorney for a commission, an accounting is required, on appeal, of the share of complainant as agreed between the partners, based upon the total amount collected, instead of the amount which defendant claimed was actually paid to the portion of Indian claimants who first employed him.

Appeal from Branch; Yaple, J.  Submitted November 17, 1910.  (Docket No. 63.)  Decided February 1, 1911.

Bill by William F. Cowham, special administrator of the estate of Edward Twiss, deceased, against John B. Shipman for an accounting. From a decree for an insufficient amount, complainant appeals. Reversed.

*Thomas E. Barkworth*, for complainant.

*Mark S. Andrews*, for defendant.

BLAIR, J. An accounting has been had in this cause pursuant to the decree in *Cowham* v. *Shipman*, 151 Mich. 673 (115 N. W. 991). The account stated by defendant was as follows:

| | | |
|---|---:|---:|
| Amount of the appropriation | $78,329 | 25 |
| Number of Indians to be distributed among | 272 | |
| Share of each Indian therein | 287 | 97½ |
| Number of Indians paid who were parties to said contracts | 22 | |
| Total amount paid to said 22 Indians | 6,335 | 45 |
| Gross amount of commissions on sums paid said 22 Indians | 653 | 54 |
| One-sixth of gross amount of said commission | 105 | 59 |

The circuit judge, before whom the account was taken in open court, found the account as stated by defendant to be correct, and decreed payment to the complainant of the said sum of $105.59. From this decree, complainant appeals to this court.

Under our decree in the principal case the question of fact for consideration upon the accounting was: What was the amount of the commissions received from the Indians who were parties to the first two contracts made by Twiss and defendant? The defendant testified, in accordance with the account as stated by him, that there were only 22 Indians paid out of the appropriation who were parties to said contracts, basing his testimony upon an examination of certain powers of attorney procured from the Indians and filed in the office of the clerk of the court of claims. This testimony was taken under objection that it was not the best evidence. Defendant also testi-

fied as to the two contracts referred to in the original case
as follows:

"That these contracts were thrown out by the depart-
ment because it did not appear that they were signed by
anybody who had authority to bind the Indians who were
named as parties in the contract. They were of no use
whatever, and never were used by me in any case in any
way, shape, or manner, except to the extent that they
were ratified in these little powers of attorney that I spoke
of before, by which and under which I commenced suit in
the court of claims wherein final judgment was rendered
on something over $100,000, and ultimately where the
government paid $156,000. I do not recollect the exact
date that the suit was commenced. However, that is the
one, and that is just the suit and the only suit, and the
only place where those contracts were used, or that I
could use them successfully in the department, and I
could use them there only as to the extent that they had
been ratified by the Indians."

Complainant put in evidence the claimants' requests for
findings of fact filed November 26, 1900, by defendant as
attorney for claimants in the court of claims of the United
States in the claim of *Phineas Pam-To-Pee* v. *U. S.*, 36
Ct. Cl. 427. A portion of these requests is as follows:

"(1) To judicially determine the claim of certain Indians
against the United States, congress passed an act entitled
'An act to ascertain the amount due the Pottawatomie In-
dians of Michigan and Indiana,' approved March 19, 1890
(26 U. S. Stat. at Large, p. 24, chap. 39), under which two
suits were commenced in this court; one entitled *'The
Pottawatomie Indians of Michigan and Indiana* v.
*The United States*, No. 16,743,' and the other *'Phineas
Pam-To-Pee and 1,371 other Pottawatomie Indians of
Michigan and Indiana* v. *The United States*, No.
16,842.' Opinion in 27 Ct. Cl. 403.  *   *   *

"(3) On motion of the defendants, the two cases were
consolidated and tried as one, and judgment entered there-
in June 27, 1892, in favor of a portion of the Indians who
were claimants and against the United States for $104,626,
that being their portion of the annuities due and unpaid
them up to that date under the twelve treaties mentioned in
the petitions, but also establishing thereby their right to the
annuities to grow due thereunder as well, which judgment

was affirmed in the Supreme Court on the claimants' appeal. 27 Ct. Cl. 403; 148 U. S. 691 (13 Sup. Ct. 742).

"(4) The parties in whose favor said judgment was rendered are Indians who were in both of said suits as petitioners and claimants therein, a portion being in case No. 16,743, and another portion as claimants in case No. 16,842. 27 Ct. Cl. 403, finding 12.     *     *     *

"(7) The claimants in this cause are a portion of the Indians in whose favor the judgment mentioned was rendered. Rec. 34 to 87. 27 Ct. Cl. 403.

"(8) The total number of Indians recovering said judgment and entitled to share in its payment was 544, of whom 272 are claimants in this case. Rec. 25, answer 16; Rec. 34 to 87; Brief, pp. 12 to 20.     *     *     *

"(14) The names of the 272 claimants in this cause who received nothing upon said judgment, nor were paid any part of the fund appropriated to pay it, are contained and described in Schedule A hereto annexed.

"(15) $78,329.25 of the moneys appropriated by Congress to pay said judgment and the annuities thereby established, as stated in the ninth request, belong to the 272 claimants mentioned in request 14, and is wrongfully withheld from them by the defendant, the amount belonging to each being $287.97."

Complainant also relies upon the proceedings relative to said claim before the court of claims and as reviewed by the Supreme Court of the United States. See *Pam-To-Pee* v. *U. S.*, 27 Ct. Cl. 403; *Id.* 36 Ct. Cl. 427; *Id.* 148 U. S. 691 (13 Sup. Ct. 742); *Id.* 187 U. S. 371 (23 Sup. Ct. 142); and the act of congress approved April 21, 1904, providing, in substance:

"To pay to the Pottawatomie Indians of Michigan, whose names are set forth in schedule A, annexed to claimants' requests for findings of fact, as stated and found by the court of claims in finding 4, in the case of Phineas Pam-To-Pee and others against the United States, reported in the thirty-sixth court of claims reports at page four hundred and thirty, there is hereby appropriated, out of any money in the treasury not otherwise appropriated, the sum of seventy-eight thousand three hundred and twenty-nine dollars and twenty-five cents, the secretary of the interior to distribute and pay the same to the Indians respectively mentioned in said schedule A, and if

any of them have died, then the sum or share that would have been paid to such Indian or Indians, respectively, if living, the secretary shall pay to the heirs or legal representatives of each of those dead, such payments, when made, to be in full for any and all claims which said Indians may have under or by virtue of the treaty and articles supplementary thereto, made with the Pottawatomie Indians September twenty-sixth and twenty-seventh, eighteen hundred and thirty-three, and duly proclaimed February twenty-first, eighteen hundred and thirty-five, said sum to be immediately available."

Finding 4 of the court of claims referred to was as follows:

"4. None of the Indians, parties in or represented by the present suit, were paid as aforesaid. A large number of them, to wit, 272, whose names are set forth in schedule A annexed to claimants' requests for findings, were descended from Indians whose names were enrolled on the rolls of Indians in Michigan in the years 1843, 1844, and 1866. A portion of the Indians who remained in Michigan as coming within the exemption of the treaty of September 27, 1833, were represented in both petitions in the cases of the *Pottawatomie Indians* v. *United States* and the *Pam-To-Pee Indians* v. *United States*."

The two contracts contained the names of numerous Indians. As will appear from the cases referred to, defendant filed his first petition in the court of claims November 5, 1890, in the name of Phineas Pam-To-Pee and 1371 other Indians, and in his petition, which was verified by defendant, he showed " that your petitioners number 1372 and their names and residences are as follows," etc., and in his verification of the petition defendant " made oath that he is the authorized attorney of the Indians named as petitioners in the foregoing petition in the matters above mentioned." Defendant, having failed to secure through the distribution ordered by the court of claims in the first suit the amount to which he was entitled, instituted the second suit ( 36 Ct. Cl., *supra*), and it was in this suit that the request for findings of fact was filed which complainant introduced in evidence on the

accounting. After the judgment in 27 Ct. Cl., *supra*, defendant, on July 27, 1895, wrote to the secretary of the interior, complaining of the incorrect method being pursued in taking the census of the Indians entitled to distribution under the judgment, and inclosing "the names of heirs whom I represent (as far as ascertained to date), and whose ancestors are named on the pay rolls, as well as those entitled in their own right, the Nottawasepis and Pokagons being in separate lists," etc. The list contained "the names of over one hundred and fifty of the claimants herein, the names of their ancestors and number on the pay roll of 1843 and 1844 being given as stated in the letter." (36 Ct. Cl. 430.) In his brief, defendant stated that his letter inclosed "a list containing the names of over 200 of the claimants in this cause, the names of their ancestors and number on the pay rolls of 1843 and 1844 being also given." In his supplemental brief in the principal case in this court, defendant says:

"After this suit went to final judgment on appeal to the Supreme Court in 1893, necessarily the question was how to collect the fees when the government finally paid the claims. As the contracts expired in January, 1894, they must be kept alive, and these documents mentioned in the paper given Twiss August 2, 1894, were used for that purpose. * * * All matters with the Indians that Twiss and the defendant contemplated when the paper of August 2, 1894, was made, was the collection of the money going to the Indians under the judgment already rendered, and their fees out of it. There was nothing left for them to do to finish the business. The contracts 'made and to be made' recited in the paper were for the same purpose. They were designed to affirm and enable them to carry out and complete their contracts with the Indians by getting that money about which at that time no question had arisen, nor did it arise until two years later. It was expected that other Indians would also sign more of the 'several papers,' but as the power to act and handle the fund was given the defendant solely, the assignment therein was made to protect Twiss. But it was all one matter and one and the same business."

It is clear that the proceedings of the petitioners before

the court of claims last referred to were for the purpose of compelling payment to them of that portion of the amount appropriated by congress on August 23, 1894, to which they were entitled, but which they had failed to receive on the distribution. The court of claims in the case in 36 Ct. Cl. having dismissed the claim, the case was appealed to the Supreme Court of the United States by defendant, and is reported in 187 U. S. 371 (23 Sup. Ct. 142), where the judgment of the court of claims was affirmed, and it was held that any further relief for the petitioners must be obtained from congress and could not be given by the courts.

The contention of the petitioners, as stated by Mr. Justice Brewer, delivering the majority opinion of the court, was:

"That a mistake having been made in the matter of identification, the government must assume all the burden of the mistake, and pay a second time that which it has once paid in pursuance of the direction of the court. That is really the contention of the petitioners.

"They were petitioners in one of the original suits, and contend that they were entitled to share in the fund, and that, as the full amount awarded by the court and appropriated by congress has already been paid to others, they are entitled to a judgment against the government for that which ought to have been paid to them out of the prior appropriation. The court of claims finds that of these petitioners 272 ought to have been placed upon the census roll, and were entitled to a share in the fund. The failure to receive their share may be a hardship to these petitioners, but it must be remembered that the method of ascertaining those entitled was prescribed by the court and pursued by the government. Having been so pursued, that fund must be considered as properly distributed."

The judgment in 27 Ct. Cl., *supra,* was incorrectly stated in the opinion in the instant case. It was not "in favor of Critcher's Indians and against those represented by Shipman and Twiss," but was in favor of the Pottawatomie Indians of Michigan and Indiana generally; the

ascertainment of the particular Indians who were entitled to a share being left to the government officials charged with the distribution of the fund appropriated by congress. Critcher's Indians furnished proof of identification and received their share of the judgment. The defendant's Indians specified in schedule A did not furnish such proof, although, as stated by Mr. Justice Brewer—

"Obviously these petitioners, whose names and places of residence were stated in the second of the original petitions, could, if they had seen fit, have furnished proofs of identification." 187 U. S., bottom page 375, top page 376 (23 Sup. Ct. 144).

And again:

"There is an apparent hardship in the result of this litigation, but one which we are constrained to believe the plaintiffs are chiefly responsible for and which can be relieved only by the action of congress."

Regardless of the fact that a considerable number of the names in schedule A are identical with names contained in the contracts, we are of the opinion that it appears from the records referred to and the written statements of defendant that the Indians in schedule A were a portion of the Indians in the first suit, or their heirs, in whose favor the judgment was rendered. The appropriation by congress, doubtless moved by the apparent hardship referred to by Mr. Justice Brewer, was of the precise amount claimed by defendant in the second suit before the court of claims and in favor of the Indians or their heirs named in his schedule A.

We are of the opinion that complainant has established his right to one-sixth of 10 per cent. of the amount appropriated by congress, and for that sum with interest from the date of collection by defendant a decree may be entered.

OSTRANDER, C. J., and BIRD, HOOKER, MOORE, MC-ALVAY, BROOKE, and STONE, JJ., concurred.